## LOCAL UNION NO. 6068 OF UNITED MINE WORKERS OF AMERICA et al. v. BIZZELL.

Court of Appeals of Kentucky.
April 24, 1953.

W. R. Lay, Grant F. Knuckles, Pineville, for appellants.

J. J. Tye, Barbourville, for appellee.

STANLEY, Commissioner.

The circuit court adjudged recovery by the appellee, Dr. M. A. Bizzell, of $925, the accumulated deductions from wages of employees of the Kentucky-Jellico Coal Company, for his services as mine physician from April 1 to May 15, 1951. The right of recovery was submitted to a jury on the issue of whether or not an authorized committee of the appellant labor union had directed the doctor to continue his professional services to its members after they had voted to dispense with them as of March 31, and he had in good faith continued to do so. The appellants insist the court should have peremptorily instructed the jury against the doctor's claims because of the absence of evidence supporting the issues submitted.

Dr. Bizzell had been physician at the mine for more than twenty years but the conditions or circumstances under which

he served and the authority for the company's deducting sums from its employees' wages for his benefit were not shown. By a secret ballot referendum of the miners, a large majority voted to dispense with his services, and he was so advised. The "election" was held in accordance with a provision of the wage agreement between the Harlan County Coal Operators Association (of which this company was a member) and District 19, United Mine Workers of America. The agreement provides for a committee composed of two representatives of the employer and two of the union "for the purpose of handling medical and hospital services," and this committee had conducted the referendum. It is referred to as the "Doctor's Committee." It is also authorized to hold an election of a company doctor. KRS 338.140 gives statutory sanction to the deduction from wages of employees of an industry for compensating a physician or surgeon furnishing treatment to them, and provides for a similarily constituted joint committee to select a physician or surgeon for the plant.

Dr. Bizzell testified that Williamson, company superintendent, and three different members of the union, Logan, Bennett and West, separately told him to keep his office open and continue his services until relieved by a newly elected doctor. He was corroborated by his wife. Dr. Bizzell had done so until about the first of June when the company's treasurer advised him that deductions from the wages of the employees had been discontinued on May 15. No successor doctor had been selected.

Of the three persons named as having advised or authorized the doctor to continue his services, only superintendent Williamson was a member of the doctor's committee. He, Logan and West were introduced as witnesses by Dr. Bizzell. Williamson testified that the doctor's committee never had a meeting and, so far as he knew, had never made any agreement with Dr. Bizzell to continue his services or any sort of contract with him. He had talked with the doctor about the situation but denied having personally told him that he could stay on or that he should do so and that he would see that he was paid. He did say to him that if he was going to remain, he ought to "treat the people" and believed the matter would be straightened out. An effort to reach an agreement was made on or about May 31 at a meeting of the members of the grievance committee and the doctor's committee and other representatives of the union with Dr. Bizzell but nothing was accomplished. Other members of the doctor's committee testified that neither as a committee nor individually did they authorize Dr. Bizzell to continue his services. Logan, a member of the grievance committee of the union, testified that he had had a conversation with Dr. Bizzell, but it was personal, general and informal; that he had only remarked that "if a man had to stay, they would have to pay him as before." West testified he had sympathized with the doctor and had told him he should charge the patients. Eli Crawford and Jo Al Smith, members of the doctor's committee, testified that the committee as a whole did not authorize Dr. Bizzell to continue his services and that they had not done so individually. Bennett did not testify.

It is apparent that neither Logan, Bennett nor West had any right or authority to speak for the employees. If we should accept Dr. Bizzell's testimony as to Williamson's direction to continue his services as being sufficient to submit the issue to the jury, we are confronted with the fact that only the committee upon which was conferred the authority to act could speak and they did not. By general acceptation, even without a by-law or rule, a committee must act as a group and have a majority concur.

We do not think the appellee may as a matter of legal right rely upon the terms of the contract between the employer and the union. The provision is that a doctor selected by an election in the manner prescribed "shall hold office until his successor is elected by the same procedure." Dr. Bizzell was selected in some other undisclosed manner long before this agreement was made and several years before the statute providing for a definite four-

year term of an industrial physician was enacted.

 Dr. Bizzell continued to administer to the needs of the miners and their families. The three or four persons whom he named specifically as having been treated, testified they had individually paid him for the services. Of course, he may have recourse against those who accepted his services and have not paid him. In good conscience he should receive the fund sought in this suit, but under the statute, KRS 338.140, the company, in the absence of consent, was without authority to make the deductions from the employees' wages for the benefit of any doctor not selected in the manner prescribed, and was, of course, without authority to pay the same to the doctor unless it had been agreed to by its employees.

We are, therefore, constrained to reverse the judgment because of insufficient evidence to take the issue to the jury or sustain the judgment.